IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| **Laureen Veronica Glaze-Washington,** ) | Civil Action No.  9:14-2819-SB-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| **Beaufort County School District and** ) | |
| **Beaufort High School**, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action was filed by the Plaintiff, pro se, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff is an employee of the Defendant Beaufort County School District.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 9, 2015. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 10, 2015, advising Plaintiff of the importance of a dispositive motion and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendants' motion may be granted, thereby ending her case. Plaintiff thereafter filed a response in opposition to the Defendants' motion on April 2, 2015, following which the Defendants filed a reply memorandum on April 23, 2015.



1

The Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in her verified Complaint[2] that she was hired by the Defendants as a secretary in December 2001. Plaintiff alleges that on November 30, 2011, she was called to a meeting along with two co-workers, and that during this meeting her supervisor, Daniel Durbin, told her that he was from the good ole boy system, that he was "never going anywhere", and then stated "my friends ask why I am a n------ lover". Plaintiff alleges that she subsequently complained about Durbin's inappropriate racial comments to Ebonique Holloman, the "Head of School",[3] and that at some point following this incident Durbin was dismissed. Plaintiff alleges that following his dismissal, Durbin "began showing up at Beaufort High School in order to intimidate me". Finally, Plaintiff alleges that "in December 2013 I was denied travel for outside training by Principal Corey Murphy. No reason or training was given for the retaliation".

In the relief portion of her Complaint, Plaintiff asks that the Defendants be "charge[d]" with "harassment discrimination - intimidation and retaliation" because of her race (African

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3] Holloman was one of the two co-workers present at the meeting with the Plaintiff on November 30, 2011. Plaintiff alleges that the other co-worker present at that meeting was Kathy Walker, an administrative assistant.

American), and seeks administrative leave with pay until her case is resolved.[4] Plaintiff has attached several exhibits to her verified complaint, which include a right to sue letter from the Equal Employment Opportunity Commission (EEOC) with attached dismissal and notice of right to sue dated July 7, 2014. Plaintiff has also attached a copy of her charge of discrimination, which is dated July 1, 2014, copies of two newspaper articles, a copy of some emails, a copy of the EEOC Intake Questionnaire completed by the Plaintiff, a copy of a travel request/reimbursement form dated December 3, 2013, and copies of correspondence relating to the denial of Plaintiff's travel request. See generally, Plaintiff's Verified Complaint, with attached exhibits.

As attachments to their motion for summary judgment, the Defendants have submitted an affidavit from Corey Murphy, who attests that he is the Principal at Beaufort High School. Murphy attests that he is an African American, and that he has no personal knowledge regarding the Plaintiff's interactions with Daniel Durbin, who was a prior principal at Beaufort High School. Murphy attests that Plaintiff is employed at Beaufort High School as an administrative assistant, a position she already had when he became principal, and that Plaintiff has not changed positions since June 2012, when he became principal.

Murphy attests that he understands that Plaintiff is alleging that he retaliated against her in December 2013 for having filed a charge of discrimination with the EEOC regarding certain alleged conduct by Daniel Durbin. The alleged retaliation was that he [Murphy] denied Plaintiff a travel request she had submitted whereby she sought to attend a conference in Myrtle Beach from

---

[4] In a subsequent motion to amend (Court Docket No. 24) Plaintiff also stated, inter alia, that she was seeking 2.2 million dollars in damages against the Defendant Beaufort County School District. However, that motion to amend was denied pursuant to 42 U.S.C. § 1981a (b)(3), which caps compensatory damages at three hundred thousand dollars.



3

February 27, 2014 through March 2, 2014. Murphy attests that when he denied this travel request in December 2013, he was not aware of any specific charge of discrimination that Plaintiff had submitted to the EEOC. Murphy further attests that Plaintiff's charge of discrimination is dated July 1, 2014, and was not received by the School District Human Resources Department until July 15, 2014, both well after he denied her travel request in 2013. Murphy has attached a copy of Plaintiff's charge of discrimination to his affidavit as Exhibit A.

Murphy attests that he denied Plaintiff's travel request because he deemed the request an unnecessary expense. Murphy attests that Plaintiff was primarily interested in the "stress management" seminar provided at the Myrtle Beach conference, and that he explained to Plaintiff that he could not justify the expenditure of school district funds for a stress relief seminar. Murphy attests that after reviewing the conference materials, he did not find that the subject matter of the conference would be of much benefit to the School District or Beaufort High School such as to justify the expense for the registration fees, travel, and hotel and food expenses, which totaled $817.20. Murphy attests that he is of the opinion that staff development could be accomplished through in house or intra district training, and that during that particular school year they were focusing on the development of customer service skills, which was not the subject matter to be covered at the Myrtle Beach conference. Murphy attests that the District or school brought in a specialist that school year to provide customer service oriented training for the administrative staff. Murphy attests that his denial of Plaintiff's travel request was not in retaliation for, or was in any way related to, any charge of discrimination made by the Plaintiff, which to his knowledge had not even been submitted or received by the School District at that time.

Murphy attests that he denied the same request for at least one other employee at or



near the same time, that he was not instructed by anyone with the school district to deny Plaintiff's travel request, and that he did not discriminate against the Plaintiff because of her race or deny the travel request to retaliate against her in any way. See generally, Murphy Affidavit, with attached exhibit [charge of discimination].

As attachments to her response in opposition to summary judgment, Plaintiff has attached a copy of a Charge of Discrimination she submitted to the South Carolina Human Affairs Commission on September 11, 2006, in which she complained about being involuntarily transferred. See Plaintiff's Exhibit A. Plaintiff has also attached some copies of her answers to some discovery requests, some emails, copies of some newspaper articles, and her administrative charging documents. See Plaintiff's Exhibits B-F. Plaintiff has also attached a copy of a billing purchase order from November 2014, with some more emails, a copy of her Performance Evaluation from May 2013, some more emails relating to her not being allowed to attend the conference in Myrtle Beach, her travel reimbursement request, and some additional discovery responses. See, Plaintiff's Exhibits G-L.

Plaintiff has also submitted a "response" to Murphy's affidavit (but which is itself not an affidavit), in which she states that Murphy allowed Durbin to enter school grounds after he resigned and Plaintiff was "intimidated". Plaintiff also states that she met with Murphy and "Margaret Thomas" on May 22, 2013 to discuss why she had been given a "satisfactory" rating on her job evaluation, and during which she presented a copy of her EEOC intake questionnaire to both of them and discussed what Durbin had said to her. Plaintiff states that she told Murphy and Thomas that because she had an EEOC investigation ongoing, that receiving a "satisfactory" rating from Murphy on her evaluation was unacceptable (that was Murphy's first year as principal) since she had



5

received "excellent" job evaluations for the past ten years. Plaintiff states that Murphy told her that he does not give any support staff an "excellent" rating in his first year, and that she "accepted his reasoning". Plaintiff states that both Murphy and Thomas also agreed with her about the importance of outside professional training in Myrtle Beach, which Plaintiff had apparently attended in prior years.

Plaintiff also states that she filed her EEOC Intake questionnaire on April 10, 2012 authorizing the EEOC to look into the discrimination she described, and that the EEOC must give the employer information about the charge, including Plaintiff's name, all of which took place before her travel request was denied by Murphy in December 2013. Plaintiff also states that, even though her travel request was denied, Beaufort County School District sent twenty-three out of twenty-four South Carolina Association of Education Officer Professional (SCAEOP) Members to Myrtle Beach in 2015. Plaintiff was apparently part of the group whose travel request was approved for the 2015 conference, with the approval being obtained on November 7, 2014. Plaintiff also states that there was no professional training conducted at the high school in 2013, although a specialist did conduct professional training on customer service in October 2014. Plaintiff also states that she was not just interested in the "stress management" seminar provided at the Myrtle Beach conference, and that she actually wanted the opportunity to receive an accreditation of PSP (Professional Standards Program) certification as well as earning a CEOE (Certified Educational Office Employee) certificate. See generally, Plaintiff "Response to Affidavit of Corey Murphy".

As an exhibit to their reply brief, the Defendants have submitted an affidavit from Pauline Alford, who attests that she is the Membership Recorder for the South Carolina Association of Educational Officer Professionals (SCAEOP). Alford attests that Plaintiff was previously a



6

member of the SCAEOP from January 29, 2010 through 2012, but that she has been listed as "archived" since 2013, and as such is not a current member of the SCAEOP, nor was she a member in 2014. See also, attached Exhibit A [Roster of Current Members of the SCAEOP from the Beaufort County School District]. Alford has also attached as Exhibit B to her affidavit a list of the members from the Beaufort County School District who attended the SCAEOP's annual conference in 2014, and as Exhibit C to her affidavit a list of the members from the Beaufort County School District who attended the SCAEOP's annual conference in 2015. Plaintiff is not shown as having attended either of those conferences. See generally, Alford Affidavit, with attached exhibits.

The Defendants have also submitted an affidavit from Jennifer Staton, who attests that she is the Risk Manager for the Beaufort County School District. Staton attests that none of the Beaufort County School District Employees who attended the SCAEOP's annual conference in 2014 and 2015 were employed at that time at Beaufort High School. See generally, Staton Affidavit.

### Discussion

As noted, the Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. While the moving party has the burden of proving that judgment on the pleadings is appropriate; Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991); once the moving party makes this showing, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with

7

liberally construing a complaint filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case, see <u>Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

## I.

### (Hostile Work Environment Claim)

Plaintiff's first claim is for a hostile work environment. Plaintiff alleges in her Complaint that on November 30, 2011, her then supervisor, Daniel Durbin (white), said during a meeting that included the Plaintiff and co-workers Ebonique Holloman and Kathy Walker that he was "never going anywhere" and that his friends asked him why he was a "n --------- lover". Plaintiff alleges that she subsequently complained to Holloman about Durbin's "inappropriate racial comments", and that after Durbin was dismissed or resigned, that he "began showing up at Beaufort High School in order to intimidate me". See <u>Complaint</u>.

To avoid summary judgment on this hostile work environment claim, Plaintiff must have evidence sufficient to create a genuine issue of fact that 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her race; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive



work environment; and 4) the conduct was imputable on some factual basis to her employer. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Scott v. Health Net Federal Services, LLC, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012). For purposes of summary judgment, the Defendants are not contesting Plaintiff's verified statements in her Complaint that Durbin made the comments alleged during the meeting on November 30, 2011, and the conduct alleged is sufficient to create a genuine issue of fact as to whether Plaintiff was subjected to unwelcome conduct in a work related setting. Further, although Plaintiff does not allege that Durbin's comment was directed at her; rather, Durbin appears to have been making a reference to himself, the undersigned finds that (considered in the light most favorable to the Plaintiff) the conduct complained of was based on race or had a racial component sufficient to satisfy the second prong of the hostile work environment analysis.

      Defendants argue, however, that Plaintiff has submitted no evidence to show that the conduct at issue was sufficiently severe or pervasive to alter her condition of employment and create an abusive work environment, and the undersigned is constrained to agree. As alleged by Plaintiff in her Complaint, and as further set forth in Plaintiff's own exhibits, this event was a one time occurrence. Plaintiff only alleges this one incident in her Complaint. In her EEOC Intake questionnaire (attached as an exhibit to her Complaint), in the section where Plaintiff is asked to state what had happened to her that she believed was discriminatory, Plaintiff states that on "11-30-2011" she was subjected to "harassment discrimination - intimidation, use of racial slur in my presence" by

9

Daniel Durbin. See Exhibit (EEOC Intake Questionnaire), p. 2, ¶ 5. Further, in an attachment to the Intake questionnaire, Plaintiff describes this event as follows:

> On November 30, 2011 @ 8:00am, I was called to a meeting by Dr. Daniel Durbin. The meeting was called by Mr. Parker, concerning another matter with a co-worker and Mrs. Ebonique S. Holloman. Mr. Parker left the room before the meeting started. Dr. Durbin stated in a very vindictive tone by telling me "You are never going to leave this place." He continued by telling me that he does not care if I file grievances and the district does not care if I file grievances. He said, "I am from the good olde boy system and I am never going anywhere." He then said the unthinkable. "My friends ask why I am a [N ------] Lover!" I was distraught for two weeks until I met with Mrs. Holloman about the incident.

This one time event (assumed for purposes of summary judgment to have occurred) is simply not sufficient to establish a hostile work environment claim under the applicable case law, as it is not the type of severe or pervasive conduct which creates a "abusive work environment" under Title VII. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir. 1986) ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of racial enmity."] (Thomas, dissenting); Hall v. Interstate Brands Corp., 395 Fed.Appx. 519, 523 (10th Cir. 2010)[Court dismissed claim of hostile work environment where Plaintiff had only alleged limited, isolated incidents of inappropriate conduct, and had only personally heard one racial comment that was directed at him]; Jordan v. Alternative Resources Corp., 467 F.3d 378, 379-380 (4th Cir. 2006) ["Title VII jurisprudence recognizes a difference between an isolated racial slur, which is always and anywhere inappropriate, and the sort of severe or pervasive conduct that creates a hostile work environment . . . . Title VII does not create a claim for every employee who complains about . . . other employees' isolated racial slurs"]; Robinson v. Montgomery Ward and Co., Inc., 823 F.2d 793, 797 (4th Cir. 1987) ["Occasional or sporadic instances of the use of racial or ethnic slurs in and of themselves do not constitute acts

10

of racial discrimination"]; cf. Best v. South Carolina Dept. of Mental Health, No. 05-2119, 2008 WL 149101, at *4 (D.S.C. Jan. 11, 2008) [One time use of the racial slur "spook" by a supervisor not sufficient to establish a racial harassment or hostile work environment claim under Title VII]; Shelman v. Powell's Trash Service, No. 12-3525, 2013 WL 5333080, at * 4 (D.S.C. Sept. 23, 2013); see also Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all offensive language and conduct in the work place."].

While Plaintiff does also allege in her Complaint that, following Durbin's dismissal, he "began showing up at Beaufort High School in order to intimidate me", Plaintiff has provided no evidence whatsoever to support this general and conclusory statement, to show what Durbin was doing or when (or how often) he was coming back, or what he did or was doing to intimidate her. This type of general and conclusory allegation, without any supporting evidence, is insufficient to establish a hostile work environment claim. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Causey v. Balog, 162 F.3d 795, 801-802 (4th Cir. 1998) [conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment]; see also Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

Finally, in her memorandum opposing summary judgment Plaintiff alludes to or makes reference to an EEOC claim she filed in 2006 about her being assigned to be a bookkeeper



11

(which had happened in 2003), as well as a charge of discrimination filed in 2006 by another individual (Walter Hawk) in which Hawk alleged that Durbin had made inappropriate comments to *him*. Neither of these two events or filings, which had occurred years earlier, have anything to do with Plaintiff's hostile work environment claim arising from the meeting that was held on November 30, 2011, nor or they even referenced anywhere in the allegations of her Complaint. Plaintiff is limited to pursuing the claims asserted in her administrative charge and as set forth in her Complaint, and therefore Plaintiff's reference to these events or exhibits in her response brief does not establish a basis for maintaining her hostile work environment claim. See Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)[Claims that exceed the scope of an administrative charge and any claim that would have naturally arisen from an investigation thereof are procedurally barred]; see also Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [Exhaustion requirement is a jurisdictional prerequisite to adjudication in federal court]; Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005)[Noting that the purpose of an administrative charge is to provide notice to an employer of the discrimination alleged and to give the parties the opportunity to resolve the claims asserted]; Mayes v. Potter, No. 2-18, 2003 WL 23220738 at * 5 (W.D. Mich. May 22, 2003) [Plaintiff cannot resurrect old EEOC claims on which he failed to timely file a complaint].

Based on the foregoing, the Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

## II.

### (Retaliation Claim)

Plaintiff's retaliation claim, as set forth in her Complaint in its totality, is as follows: "In December 2013, I was denied travel for outside training by Principal Corey Murphy. No reason

12

or training was given for the retaliation". Similarly, in her administrative charge of discrimination, Plaintiff alleges that "in December 2013, I was denied travel for outside training . . . . Corey Murphy, (African American) Principal, informed me I was denied the travel request because the training was going to be conducted in-house. No reason was given for the [retaliation]".

Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985), overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate

13


that the Defendant's proffered reason is pretextural. Id.

Considered in the light most favorable to the Plaintiff, the evidence is sufficient to show that Plaintiff engaged in protected activity by complaining to Ebonique Holloman about Durbin's inappropriate and racially charged language following the meeting on November 30, 2011, by completing an Intake Questionnaire with the EEOC on April 10, 2012 in which she complained about alleged discriminatory conduct or actions, and by filing an administrative charge of discrimination with the EEOC on July 1, 2014. Rodas v. Town of Farmington, 918 F.Supp.2d 183, 188 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."]; Bowman v. Holopack Intern. Corp., No. 06-1648, 2007 WL 4481130 at * 14 (D.S.C. Dec. 19, 2007)["[T]he opposition clause encompasses informal protests, such as voicing complaints to superiors or protests using an employer's grievance procedures."]. Defendants contend, however, that Plaintiff has failed to otherwise establish her prima facia case or to present evidence of pretext sufficient to create a genuine issue of fact as to whether unlawful retaliation occurred, and again the undersigned is constrained to agree.

First, the alleged adverse action of which Plaintiff complains is Murphy's decision not to approve her request to attend a conference in Myrtle Beach. It is not contested that Murphy did in fact disapprove this request. See Murphy Affidavit; see also Plaintiff's Exhibits [Travel Request dated December 3, 2013, emails dated December 4 and December 5, 2013] (attachments to Plaintiff's Complaint); Plaintiff's Exhibit [email dated December 18, 2014] (attached to Plaintiff's Response Brief). However, Defendants argue that Plaintiff not being allowed to attend a conference in Myrtle



14

Beach is not an "adverse employment action" for purposes of a Title VII retaliation claim. Cf Darby v. U.S. Dept. of Energy, No. 05-4325, 2006 WL 7348136, at * 5 (6th Cir. June 9, 2006) [Finding that "the failure to provide training or attend seminars is not an adverse employment action"]; Murray v. Chicago Transit Authority, 252 F.3d 880, 887-888 (7th Cir. 2001) [Finding that employer's refusal to approve a travel request to attend a conference was not an adverse employment action for purposes of a Title VII retaliation claim]; Fyfe v. City of Ft. Wayne, 241 F.3d 597, 602-603 (7th Cir. 2001) [Employer's denial of reimbursement of travel and hotel expenses for attendance at a seminar did not constitute an adverse employment action for purposes of a Title VII retaliation claim]; see also Burlington, 548 U.S. at 68 [to constitute an "adverse employment action" for purposes of a Title VII retaliation claim, the action must be conduct "likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers [or that would dissuade] a reasonable worker from making or supporting a charge of discrimination"].

Moreover, even if this Court assumes for purposes of summary judgment that Murphy's failure to approve Plaintiff's request for travel expenses to attend a conference in Myrtle Beach *was* sufficient to constitute an "adverse employment action" for purposes of a Title VII retaliation claim, Plaintiff has presented no evidence to show a causal connection between Murphy's decision and her having earlier complained about Durbin's racially insensitive statement on November 30, 2011. First off, Murphy has submitted a sworn affidavit in which he attests that he has no personal knowledge regarding Plaintiff's interactions with Durbin (a prior principal at Beaufort High School), and that when he denied Plaintiff's travel request in December 2013, he was not aware of any specific charge of discrimination that Plaintiff had submitted to the EEOC. Cf Summers v. City of Dotham, Ala., 444 Fed. Appx. 346, 352 (11th Cir. 2011)["[I]n context of Title

15

VII retaliation claims 'neither a court nor a jury may impute knowledge to a decision-maker who has sworn he had no actual knowledge'"] (quoting Brochu v. City of Riviera Beach, 304 F.3d 1144, 1156 (11th Cir. 2002)). While Plaintiff does state in her "response" to Murphy's affidavit that she told Murphy and Margaret Thomas during a meeting on May 22, 2013 about what Durbin had said during the November 2011 meeting and that she even gave them a copy of her EEOC Intake Questionnaire; see Response, at p. 2; Plaintiff's "response" is not sworn and therefore does not constitute "evidence" of this purported fact. Whittaker v. Morgan State University, 524 F3d. Appx. 58, 60-61 (4th Cir. May 30, 2013)[No error for district court to refuse to consider unsworn letter].

In any event, even assuming (again for purposes of summary judgment) that Murphy *was* aware of Plaintiff having complained about Durbin's earlier conduct, Plaintiff has presented no evidence, other than her own unsupported surmise or speculation, to show that Murphy's allegedly retaliatory conduct was in any way related to her earlier complaint about Durbin. Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [her] disfavorable treatment was the result of discrimination...."] The lack of any probative evidence connecting Plaintiff's protected activity to Murphy's decision to not approve her travel request in 2013 is fatal to Plaintiff's retaliation claim. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]; Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.'].



16

Plaintiff has also failed to submit any evidence, or even any cogent argument, to show why Murphy, who is the same race (African American) as the Plaintiff, would retaliate against her for complaining about racial discrimination. Cf. Marlow v. Office of Court Admin. of State of N.Y., 820 F.Supp. 753, 757 (S.D.N.Y. 1993), aff'd, 22 F.3d 1091 (2d Cir. 1994)[Finding that Plaintiff's ability to raise an inference of discrimination was hampered where decision makers were members of same protected group]; Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991)[Finding that it is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class ]; see also DeWitt v. Mecklenburg County, 73 F.Supp.2d 589, 599 (W.D.N.C. 1999)[Finding sex discrimination claim was undermined "where a number of the challenged employment decisions were made or implemented by a member of Plaintiff's own gender"]. Indeed, rather than presenting evidence to support the claim of retaliation set forth in her Complaint, Plaintiff complains in her brief opposing summary judgment, that in February 2013 Murphy placed her "in a hostile working environment concerning embezzlement" concerning a supply purchase request, and again in December 2014 concerning an invoice dealing with Applied Data. See Plaintiff's Brief, pp. 6-7. Neither of these incidents (which are not part of the allegations of her Complaint or her administrative charge) have anything to do with the alleged retaliation at issue in this lawsuit.

      The undersigned has carefully examined and evaluated the exhibits Plaintiff has attached to her Complaint and her brief, and there is nothing in any of these documents which gives rise to a genuine issue of fact that Murphy, by failing to approve her travel request in December 2013, was retaliating against the Plaintiff for her having engaged in any activity protected by Title VII. There appears to be no question but that Plaintiff went to considerable lengths to try and obtain

17

approval for this trip, and while she obviously believes her travel request should have been approved and that she was dealt with unfairly (and indeed the undersigned makes no finding as to whether Murphy's approval or non-approval of this travel request was appropriate), Plaintiff has simply provided no evidence to support her general and conclusory allegations that the *reason* Murphy disapproved her travel request was because she had engaged in activity protected by Title VII. Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]; Rucker v. Greenville Co. Sheriff Dep't., No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012) [Conclusory allegation or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; Palermo v. Clinton, No. 11-1958, 2012 WL 169125 at * 2 (7th Cir. Jan. 20, 2012)[Suspicious timing alone generally not enough to create a triable issue retaliation case]; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)[Plaintiff may not "create a genuine issue of fact through mere speculation or the building of one inference upon another"]; cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); Colbert v. Tapella, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions .... A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."]).

Therefore, since Plaintiff has failed to establish a genuine issue of fact as to whether

Murphy's disapproval of her travel request in December 2013 was the result of unlawful retaliation, her retaliation cause of action should be dismissed. Gairola, 753 F.2d at 1288, n. 4 [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [her] disfavorable treatment was the result of discrimination...."]; Rucker v. Greenville Co. Sheriff Dep't., No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; see also University of Texas Southwest Medical Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013) [The evidence must be sufficient to give rise to an inference that, "but for" the protected activity, the adverse action would not have occurred] [pretext stage of review].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted,** and that this case be dismissed.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

August  6  , 2015
Charleston, South Carolina

19

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

