IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Laureen Veronica Glaze-Washington, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Beaufort County School District and )<br>Beaufort High School, )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 9:14-2819<br><br>**ORDER** |

This matter is before the Court upon Plaintiff Laureen Veronica Glaze-Washington's ("the Plaintiff" or "Washington") pro se complaint, which alleges claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–e17. On March 9, 2015, the Defendants filed a motion for summary judgment, to which Washington responded.

The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). On August 6, 2015, the Magistrate Judge issued a report and recommendation ("R&R"), outlining the issues and recommending that the Court grant the Defendants' motion for summary judgment. The Plaintiff filed objections to the R&R; the Defendants filed a response to the Plaintiff's objections; and the Plaintiff filed a reply.



**BACKGROUND**

In her verified complaint, the Plaintiff alleges that she was hired by the Defendants as a secretary in December 2001 and that she was subjected to racial harassment by her white supervisor, Daniel Durbin. Specifically, the Plaintiff alleges that on November 30, 2011, she was called to a meeting along with co-workers Ebonique S. Holloman and Kathy

Walker, at which meeting Durbin stated in a very vindictive tone that he was from the "good olde [sic] boy system." Also, according to the Plaintiff, Durbin stated that his friends ask him why he is a "nigger lover." The Plaintiff alleges that she was distraught for weeks until she met with Holloman about the incident, and the Plaintiff asserts that she filed a complaint. The Plaintiff also alleges that once Durbin no longer worked at the school, he continued to show up there to intimidate her. In addition to the foregoing, the Plaintiff alleges that in December of 2013, Principal Corey Murphy denied her request to travel to Myrtle Beach for outside training. The Plaintiff attached several exhibits to her complaint, including her right to sue letter from the Equal Employment Opportunity Commission ("EEOC") dated July 7, 2014, her charge of discrimination dated July 1, 2014, copies of two newspaper articles, a copy of some emails, a copy of the EEOC Intake Questionnaire completed by the Plaintiff, a copy of a travel request/reimbursement form dated December 3, 2013, and copies of correspondence related to the denial of her travel request.

In support of their motion for summary judgment, the Defendants submitted the affidavit of Murphy, who attests that he is an African-American and is the principal at Beaufort High School. Murphy attests that he has no personal knowledge regarding the Plaintiff's interaction with Durbin, who was a prior principal at the high school. According to Murphy, the Plaintiff is employed at Beaufort High School as an administrative assistance, a position she held when he became principal, and she has not changed positions since June 2012 when he became principal.

In his affidavit, Murphy also attests that he understands that the Plaintiff is alleging that he retaliated against her in December of 2013 (for having filed a charge of discrimination with the EEOC related to Durbin's alleged conduct) by denying the Plaintiff's

2

request to travel to a conference in Myrtle Beach from February 27, 2014, through March 2, 2014. According to Murphy, when he denied the Plaintiff's travel request, he was not aware of any specific charge of discrimination that the Plaintiff had submitted to the EEOC, as the Plaintiff's charge of discrimination is dated July 1, 2014, and was not received by the School District's Human Resources Department until July 15, 2014. In addition, Murphy attests that he denied the Plaintiff's travel request because he deemed it to be an unnecessary expense of more than $800, and he did not believe the stress management seminar would benefit the School District or Beaufort High School. Murphy also attests that the denial of the Plaintiff's travel request was not in retaliation for, and was in no way related to, any charge of discrimination made by the Plaintiff.



As attachments to her response in opposition to the Defendants' motion for summary judgment, the Plaintiff submitted a copy of an unrelated charge of discrimination she submitted to the South Carolina Human Affairs Commission on September 11, 2006, in which she complained about being involuntarily transferred. She also attached some copies of her answers to some discovery requests, copies of some newspaper articles, her administrative charging documents, a copy of a billing purchase order from November 2014, a copy of her performance evaluation from May 2013, and more emails relating to her not being permitted to attend the training conference in Myrtle Beach. In addition, the Plaintiff submitted a "response" to Murphy's affidavit, which is not itself an affidavit, but wherein she states that Murphy allowed Durbin to enter school grounds after Durbin resigned and that she felt intimidated. The Plaintiff also states that she met with Murphy and Margaret Thomas on May 22, 2013, to discuss why she had been given a "satisfactory" rating on her job evaluation when she had received "excellent" job

evaluations for the past ten years. The Plaintiff states that she told Murphy and Thomas that because of the ongoing EEOC investigation, receiving a "satisfactory" rating was not acceptable in light of her prior evaluations. The Plaintiff states, however, that Murphy indicated that he does not give any support staff an "excellent" rating his first year, and the Plaintiff admits she accepted his reasoning. In addition, the Plaintiff states that she filed her EEOC intake questionnaire on April 10, 2012, authorizing the EEOC to investigate the alleged discrimination, and she contends that the EEOC must have given her employer information about the charge, including the Plaintiff's name, and that all of that would have taken place before her travel request was denied in December 2013.

## STANDARDS OF REVIEW

I.  **The Magistrate Judge's R&R**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making the final determination remains with the Court. Mathews v. Weber, 423 US. 261, 269 (1976). The Court reviews de novo those portions of the R&R to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).



II.  **Summary Judgment**

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather

to determine if there is a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. Anderson, 477 U.S. at 248.

## DISCUSSION

I.  **The Magistrate Judge's Findings**

*Hostile Work Environment*



In the R&R, the Magistrate Judge first determined that the Plaintiff failed to establish a hostile work environment claim in connection with her complaints about Durbin. As the Magistrate Judge noted, to avoid summary judgment on her hostile work environment claim, the Plaintiff must point to evidence that would allow a reasonable jury to conclude that:(1) she was harassed based on her race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. Equal Emp't Opportunity Comm'n v. Central Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009).

First, the Magistrate Judge assumed (as the Defendants did not contest the issue) that the Plaintiff's verified allegations in her complaint about Durbin's comments in 2011 were sufficient to create a genuine issue of material fact as to whether the Plaintiff was subjected to unwelcome conduct at work. The Magistrate Judge also assumed, in considering the evidence in the light most favorable to the Plaintiff, that although Durbin's alleged comments were in reference to himself, they were sufficiently related to race to satisfy the second prong of the hostile work environment analysis. However, with regard to whether the conduct was sufficiently pervasive to create an abusive working environment (the third prong of the hostile work environment analysis), the Magistrate Judge agreed with the Defendants that the one-time event complained of by the Plaintiff failed to establish a hostile work environment claim under Title VII.

As the Magistrate Judge noted, in her EEOC intake questionnaire, the Plaintiff states that she was subjected to "harassment discrimination - intimidation, use of racial slur in my presence" by Daniel Durbin on November 30, 2011, and her complaint alleges only this incident. In addition, the Plaintiff, in her attachment to her intake questionnaire, describes the event as follows:



> On November 30, 2011 @ 8:00am, I was called to a meeting by Dr. Daniel Durbin. The meeting was called by Mr. Parker, concerning another matter with a co-worker and Mrs. Ebonique S. Holloman. Mr. Parker left the room before the meeting started. Dr. Durbin stated in a very vindictive tone by telling me "You are never going to leave this place." He continued by telling me that he does not care if I file grievances and the district does not care if I file grievances. He said, "I am from the good olde boy system and I am never going anywhere." He then said the unthinkable. "My friends ask why I am a [------ Lover!" I was distraught for two weeks until I met with Mrs. Holloman about the incident.

(Entry 1-1 at 13.) Even assuming that this event occurred, the Magistrate Judge

6

determined that the isolated racial incident did not amount to the sort of severe or pervasive conduct that creates a hostile work environment under Title VII. (See R&R, Entry 46 at 10-11 (citing numerous cases indicating that limited or isolated racial comments are not sufficient to establish a hostile work environment).)

Moreover, to the extent the Plaintiff relies on her allegation that Durbin returned to the high school after he no longer worked there to intimidate her, the Magistrate Judge found this conclusory allegation insufficient to create a genuine issue of material fact as to the Plaintiff's claim, as the Plaintiff provided no evidence to support the allegation or indicate what Durbin did to intimidate her or how often it occurred. In addition, with regard to the Plaintiff's references in her memorandum opposing summary judgment to an EEOC claim she filed in 2006 (about being assigned to be a bookkeeper, which had happened in 2003), as well as to a charge of discrimination filed in 2006 by another individual, the Magistrate Judge concluded that neither of these events were related to the Plaintiff's hostile work environment claim arising from the November 2011 meeting. Noting that the Plaintiff is limited to pursuing the claims asserted in her administrative charge and as set forth in her complaint, the Magistrate Judge determined that the Plaintiff's reference to these events failed to establish any basis to maintain her hostile work environment claim. Based on the foregoing, the Magistrate Judge determined that the Defendants were entitled to summary judgment on the Plaintiff's hostile work environment claim.



### Retaliation

As previously set forth, the Plaintiff alleges in her complaint that Murphy retaliated against her by denying her request to travel for outside training. As the Magistrate Judge noted, Title VII makes it unlawful for an employer to retaliate against an employee for

engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). To succeed a plaintiff must establish a prima facie case by showing: (1) that she engaged in protected activity; (2) that the employer acted adversely against her; and (3) that there was a causal link between the protected activity and the asserted adverse action. Ziskie v. Mieta, 547 F.3d 220, 229 (4th Cir. 2008); Holland, 487 F.3d at 218. Once a plaintiff establishes a prima facie case, the employer has the burden of establishing a legitimate, non-discriminatory reason for its actions. If the employer can do so, then the burden shifts back to the Plaintiff to show that the employers proffered reason is pretextual.

Here, considering the facts in the light most favorable to the Plaintiff, the Magistrate Judge determined that the evidence was sufficient to show that the Plaintiff engaged in protected activity by complaining to Holloman about Durbin's alleged inappropriate conduct during the November 2011 meeting, by completing an intake questionnaire with the EEOC on April 10, 2012, in which she complained about allegedly discriminatory conduct, and by filing an administrative charge of discrimination with the EEOC on July 1, 2014. However, as to the other elements of a prima facie case, the Magistrate Judge agreed with the Defendants that Murphy's denial of the Plaintiff's request to attend a conference in Myrtle Beach does not constitute an adverse employment action. Moreover, the Magistrate Judge agreed with the Defendants that even if the Court assumed that Murphy's denial of her travel request constituted an adverse employment action, the Plaintiff nevertheless failed to offer any evidence to demonstrate a causal connection between Murphy's decision and her protected activity. As such, the Magistrate Judge concluded that the Defendants were entitled to summary judgment on the Plaintiff's retaliation claim, stating:



> The undersigned has carefully examined and evaluated the exhibits Plaintiff

has attached to her Complaint and her brief, and there is nothing in any of these documents which gives rise to a genuine issue of fact that Murphy, by failing to approve her travel request in December 2013, was retaliating against the Plaintiff for having engaged in any activity protected by Title VII. There appears to be no question but that Plaintiff went to considerable lengths to try and obtain approval for this trial, and while obviously she believes her travel request should have been approved and that she was dealt with unfairly (and indeed the undersigned makes no finding as to whether Murphy's approval or non-approval of this travel request was appropriate), Plaintiff has simply provided no evidence to support her general and conclusory allegations that the *reason* Murphy disapproved her travel request was because she had engaged in activity protected by Title VII.

(Entry 46 at 17-18.)

## II.    The Plaintiff's Objections

The Plaintiff first objects to the Magistrate Judge's statement in the background section of the R&R that Durbin was dismissed at some point after his inappropriate racial comments. The Plaintiff asserts that Durbin was not dismissed for making a racial remark to her and that he was not terminated for allegedly making a racial remark to someone else in 2006. Instead, the Plaintiff contends that Durbin was allowed to resign for changing students' grades without proper documentation.

First, the Court notes that the R&R does not state that Durbin was dismissed *because* he made a racial mark to the Plaintiff or someone else; rather, the R&R indicates that Durbin was dismissed at some point following the complained-of event, and the Court has clarified in this order that at some point after the complained-of incident, Durbin ceased working at the high school.

Next, the Plaintiff objects to the contents of Murphy's affidavit, wherein he states that he was not aware of any specific charge of discrimination submitted by the Plaintiff when he denied her travel request, and she asserts that Murphy was aware on May 24,

2013, of the Plaintiff filing an EEOC intake questionnaire. The Plaintiff contends that a meeting was held on that day to discuss the Plaintiff's "satisfactory" job performance evaluation, and the Plaintiff claims she discussed her intake questionnaire with Murphy at that meeting. Because Murphy did not deny her travel request until December 2013, the Plaintiff contends that Murphy knew of her charge of discrimination at the time.

After review, the Court finds this objection unavailing. Even assuming that the Plaintiff is correct and Murphy did know of her charge of discrimination when he denied her travel request in 2013, this fact alone is insufficient to show Murphy's decision was in any way related to her earlier protected conduct. In other words, a simple showing that an adverse action occurred after a complaint of discrimination is not enough to allege a prima facie case of retaliation; rather, there must be some evidence from which a reasonable fact finder could conclude that a causal connection exists between the protected activity and the adverse action. Here, even assuming that Murphy's denial of the Plaintiff's travel request amounted to an adverse action, because the Plaintiff has not offered *any* evidence to show a connection between the denial of her travel request and her earlier protected activity, her retaliation claim still fails. The Plaintiff's objection is without merit.

Next, the Plaintiff asserts that Murphy's affidavit is also incorrect insofar as neither Murphy nor the school district brought in a specialist to provide customer service training to staff. This objection has no bearing on the ultimate issues of this case. Likewise, the Plaintiff contends that her failure to submit a sworn response amounts to harmless error under Rule 61, but again, this objection has no bearing on the ultimate issues of this case.

With regard to the Magistrate Judge's legal findings, the Plaintiff contends that the Magistrate Judge erred in recommending that the Court grant summary judgment on her

10

hostile work environment claim. She first alleges that she was harmed by being transferred on February 14, 2006, and that she was denied equal wages; however, these allegations relate to events in 2006 and do not relate to the events complained of in the Plaintiff's EEOC forms or her complaint. As the Magistrate Judge noted, the Plaintiff is limited to pursuing the claims presented in her administrative charge and her complaint.

Next, the Plaintiff points out that whether the alleged harasser is a victim's supervisor is relevant to a hostile work environment claim. Because it does not appear that the status of the Plaintiff's alleged harasser was fully addressed in the R&R, the Court will reconsider the Plaintiff's hostile work environment claim.

As previously set forth, the Magistrate Judge determined in his R&R that the one-time event complained of by the Plaintiff was not sufficient to create an issue of fact as to the Plaintiff's hostile work environment claim, and the Magistrate Judge cited multiple cases indicating that limited or isolated racial comments are not sufficient to establish a hostile work environment. Importantly, however, the cases cited by the Magistrate Judge pre-date the Fourth Circuit's recent opinion in Boyer-Liberto v. Fountainebleau Corp., where the court found that even though "hostile work environment claims often involve repeated conduct," an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." 786 F.3d 264, 277 (4th Cir. 2015) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)) (internal quotations omitted).[1]



---

[1] In Faragher, the Supreme Court stated that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"). 524 U.S. at 788; see also Jordan v. Aternative Resources Corp., 458 F.3d 332 (4th Cir. 2006) ("Courts determine 'whether an

In Boyer-Liberto, the Fourth Circuit determined that a supervisor's use of the slur "porch monkey," when directed at an employee on two occasions over a period of two days and when used to "cap explicit, angry threats that [the supervisor] was on the verge of using her supervisory powers to terminate [the employee's] employment," was severe enough to engender a hostile work environment. 786 F.3d at 278-80. The court noted: "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor–e.g., 'a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.'" Id. at 278 (quoting Rodgers v. W.-S. Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993)). In addition, the court noted that the use of the slur "porch monkey" was "about as odious as the use of the 'nigger,'" and the court stated: "As we and several of our sister circuit courts of appeals have recognized, perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." Id. at 280 (quoting Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir 2001), and citing other related cases) (internal quotations and citations omitted).

Here, after careful consideration, the Court believes that although the complained-of conduct may not have been pervasive, a reasonable jury could conclude that it was sufficiently severe to alter the conditions of the Plaintiff's employment and create a hostile

---

environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'") (citation omitted).

work environment. "First, the use of 'the word 'nigger' is pure anathema to African-Americans,' as it is to all of us." Pryor v. United Air Lines, Inc., 791 F.3d 488, 497 (4th Cir. 2015) (quoting Spriggs, 242 F.3d at 185)). Moreover, as the Fourth Circuit noted in Pryor, the "[u]se of that word is the kind of insult that can create an abusive working environment in an instant, and is degrading and humiliating in the extreme." Id. at 496-97 (quoting the district court's opinion in Pryor and citing Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993), and Walker v. Thompson, 214 F.3d 615, 626 (5th Cir. 2000)). In addition, the severity of the alleged use of the term is only enhanced by the fact that Durbin exercised supervisory authority over the Plaintiff. In light of the recent Fourth Circuit cases cited above, the Court believes that the Plaintiff has created a jury issue regarding whether Durbin's alleged conduct was "extremely serious" and sufficiently severe to create a hostile work environment. Accordingly, the Court declines to adopt the R&R on this issue and denies this portion of the Defendants' motion for summary judgment.

Next, the Court considers the Plaintiff's objections with respect to the Magistrate Judge's findings on her retaliation claim. Importantly, rather than addressing the issues actually presented to and analyzed by the Magistrate Judge, the Plaintiff attempts to assert a new retaliation claim arising out of events occurring in December of 2014 and May of 2015. Specifically, the Plaintiff contends that on December 18, 2014, Murphy denied her second request to attend training in May of 2015, and she asserts that another individual's request to attend the training was allowed. She contends that she filed a new EEOC intake questionnaire on May 27, 2015, regarding these events, but as the Defendants point out in their response to the Plaintiff's objections, it does not appear that any charge of discrimination has been issued from those allegations, and this Court's consideration of

a new claim would be premature. Therefore, the Court agrees with the Defendants that the Plaintiff's attempt to raise new claims is not proper, and this objection is without merit.

Moreover, after a thorough review of the record, the Court agrees with the Magistrate Judge that even assuming that Murphy's denial of the Plaintiff's initial travel request amounted to an adverse action (which is itself doubtful), and even assuming that Murphy was aware of the Plaintiff's protected activity, the record simply contains no evidence to show any causal link between the asserted adverse action and the protected activity. As such, the Court agrees with the Magistrate Judge that the Defendants are entitled to summary judgment on the Plaintiff's retaliation claim.

## CONCLUSION

For the reasons set forth herein, it is hereby **ORDERED** that the R&R (Entry 46) is adopted only in part. Specifically, the Court adopts the Magistrate Judge's findings as to the Plaintiff's retaliation claim and grants the Defendants' motion for summary judgment (Entry 37) as to that claim. With respect to the Plaintiff's hostile work environment claim, however, the Court declines to adopt the R&R and denies the Defendants' motion for summary judgment as to that claim. Finally, the Court remands this matter to the Magistrate Judge to assist the Plaintiff in obtaining counsel if necessary (either retained or appointed pro bono) and to consider any issues that may arise relating to the mediation of this case pursuant to Local Civil Rules 16.04 through 16.12 (D.S.C.).

IT IS SO ORDERED.

Sol Blatt, Jr.
Senior United States District Judge

March 10, 2016
Charleston, South Carolina